UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAYRIE GOMEZ HORTA,                          16-CV-363-LJV-MJR
                                              REPORT AND RECOMMENDATION
                Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.
_____

      This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo pursuant to 28 U.S.C. §636(b)(1) for the preparation of a report and recommendation on dispositive motions. (Dkt. No. 14).

      Plaintiff Shayrie Gomez Horta brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that Plaintiff's motion (Dkt. No. 17) be denied and the Commissioner's motion (Dkt. No. 20) be granted.

## BACKGROUND

I.   *Procedural History*

      On November 15, 2011, Plaintiff filed an application for SSI alleging disability since September 7, 2011. (*See* Tr. 119-24, 132).[2] Plaintiff previously worked as a customer

---

[1]    The previously named defendant, Carolyn W. Colvin, is no longer serving as the Acting Commissioner of Social Security. The Clerk of Court is directed to amend the caption accordingly.

[2]    References to "Tr." are to the administrative record in this case.

service representative, general laborer in a factory, housekeeper, and retail sales associate (Tr. 135, 332-33), but she contends that she can no longer work because of seizures/epilepsy, obesity, and panic attacks, among other impairments (*see* Tr. 324; *see also* Dkt. No. 17-1 (Plaintiff's Memo. of Law)).  Plaintiff's SSI application was denied on January 5, 2012 (Tr. 46-52), after which she requested a hearing before an Administrative Law Judge (Tr. 53-55).  On December 12, 2012, Plaintiff, represented by counsel, appeared before Administrative Law Judge Mark Hecht ("ALJ Hecht") for a hearing.  (Tr. 29-39).  On January 4, 2013, ALJ Hecht issued his decision denying Plaintiff's SSI claim.  (Tr. 14-28).  After the Appeals Council denied Plaintiff's request for review of ALJ Hecht's decision (Tr. 1-6), Plaintiff commenced suit in this Court challenging the denial of benefits.  *Gomez Horta v. Colvin*, 14-CV-388-RJA-LGF (W.D.N.Y).  On December 5, 2014, Plaintiff and the Commissioner stipulated to remand her case back to the Commissioner for further administrative proceedings.  *See id.*

Upon remand, Plaintiff, again represented by counsel, appeared before Administrative Law Judge Timothy McGuan ("ALJ McGuan") on December 8, 2015 for another hearing on her SSI claim.  (Tr. 320-42).  ALJ McGuan denied Plaintiff's claim on March 7, 2016.  (Tr. 268-91).  Plaintiff opted not to file exceptions with the Appeals Council, making ALJ McGuan's decision the final decision of the Commissioner.  (*See* Tr. 268-70).  This action followed.

    II.    *Summary of the Evidence*

        A.  *Medical Evidence*

The Court will briefly summarize the medical evidence that is relevant to its findings and recommendations.

In December 2011, Plaintiff visited Dr. S.K. Mongia for treatment of her seizure disorder. Plaintiff reported having seizures since the age of sixteen. The seizures involved losing consciousness, falling to the ground, tonic or clonic convulsive activity, and occasional tongue biting followed by fatigue. Dr. Mongia increased Plaintiff's dosage of Depakote, a seizure medication, and directed her not to drive. However, he went on to find "no cause for disability," noting that Plaintiff was "otherwise in good health." (Tr. 171-82).

Plaintiff began treating with Dr. Adnan Munir, her primary care physician (*see* Tr. 260), in January 2012 (Tr. 210-11). At an appointment on January 18, 2012, Dr. Munir diagnosed Plaintiff with a seizure disorder and dyslipidemia.[3] (Tr. 212-13). On February 23, 2012, Dr. Munir added the diagnosis of morbid obesity. (Tr. 215-16). Four days later, on February 27, 2012, Dr. Munir completed a "Medical Examination for Employability Assessment" form provided by the New York State Office of Temporary and Disability Assistance. Using the "check the box" section of the form, Dr. Munir found Plaintiff "moderately limited" in walking, standing, lifting, carrying, pushing, pulling, bending, using stairs/climbing, and being able to function in a work setting at a consistent pace. (Tr. 217-18). Plaintiff continued to see Dr. Munir throughout the relevant period. (Tr. 582-628).

On August 14, 2012, Plaintiff visited Dr. Marc Frost at the Dent Neurologic Institute. Plaintiff reported having a breakthrough seizure the week before the appointment. Dr. Frost stated, "[s]he continues to get seizures. Unfortunately, EEGs have been normal so the classification is difficult to make at this time. Description wise, I suspect these are

---

[3] Dyslipidemia means "abnormal levels of fatty substances in the blood." Social Security Ruling 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002).

complex partial in nature." Dr. Frost increased Plaintiff's dosage of Lamictal, a seizure medication. (Tr. 251-53).

On September 11, 2012, Plaintiff visited Malia Deangelis, a physician assistant ("PA") at the Dent Neurologic Institute. Plaintiff did not report any new seizure activity at this appointment. (Tr. 248-50). At a follow-up appointment with PA Deangelis on November 14, 2012, Plaintiff reporting having a "seizure-like episode" nine days earlier while sitting on the ground writing. PA Deangelis diagnosed epilepsy, obstructive sleep apnea syndrome, and memory loss. (Tr. 572-73).

Plaintiff continued to visit PA Deangelis throughout 2013 for sleep apnea, epilepsy, migraines, and "spells." In February 2013, Plaintiff reported having near daily "electric shock" episodes when she tried to concentrate or write. (Tr. 569-71). In May 2013, Plaintiff reported having occasional spells while writing and concentrating that caused her hand to become "shaky." PA Deangelis believed that Plaintiff's episodes were not seizures but were instead related to her anxiety and stress. (Tr. 567-69).[4] In July 2013, PA Deangelis noted that Plaintiff had a "new concern" of infrequent migraines. Plaintiff reported having visited the emergency room for a headache in June of that year. (Tr. 565-67). On October 16, 2013, Plaintiff again reported "occasional spell[s]" that made her "shaky." PA Deangelis noted that Plaintiff "is seeing a counselor for her anxiety and will soon be seeing a psychiatrist." She advised Plaintiff not to work at heights, on ladders, or with sharp objects. (Tr. 562-64). Later that month, Plaintiff advised PA Deangelis that she visited the emergency room after experiencing a breakthrough seizure. Plaintiff told

---

[4]     Around this time, Dr. Munir diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. (Tr. 605-07).

PA Deangelis that one of her seizure medications, Keppra, made her dizzy. PA Deangelis discontinued that medication and increased Plaintiff's dosage of Lamictal. (Tr. 560-62).

Plaintiff continued to visit the Dent Neurologic Institute throughout 2014. In March of that year, Plaintiff advised Dr. Frost that she had not had any seizures since December 2013. (Tr. 555-57). In June 2014, Plaintiff visited PA Deangelis complaining of severe dizziness and blurry double vision, which PA Deangelis believed to be migrainous vertigo. (Tr. 552-54). At an appointment in August 2014, Plaintiff reported having two breakthrough seizures since her last visit in June. The seizures caused her to fall to the ground with tonic clonic activity. Plaintiff also reported a breakthrough migraine that lasted three days. PA Deangelis increased Plaintiff's dosage of Lamictal and prescribed a different medication to treat her headaches. (Tr. 550-52). In October 2014, Plaintiff informed PA Deangelis that she had one breakthrough seizure since her last visit in August. (Tr. 547-49).

Plaintiff continued to see PA Deangelis throughout 2015. In February 2015, Plaintiff reported having a seizure while dancing at church. The seizure resulted in tonic clonic activity and made her fall down and bite her tongue. PA Deangelis decided to increase Plaintiff's dosage of Lamictal. (Tr. 545-47). In April 2015, Plaintiff informed PA Deangelis that although she did not have a seizure since her last appointment in February, the increased dosage of Lamictal made her dizzy. (Tr. 542-44). Plaintiff also reported dizziness at an appointment in May 2015, which PA Deangelis believed to be migrainous vertigo. (Tr. 539-42). The next month, Plaintiff denied any additional seizure-like activity, but she did report having another migraine. PA Deangelis diagnosed epilepsy, migraine, and obstructive sleep apnea. (Tr. 537-39).

B. *Administrative Hearing Testimony*

Born in 1987, Plaintiff was twenty-eight-years old at the time of the second administrative hearing. (Tr. 324). Plaintiff testified that she cannot work due to seizures/epilepsy and panic attacks. (*Id.*). The seizures cause her to lose consciousness, shake, bite her tongue, and fall down. (Tr. 325). She has to rest and sleep after having a seizure. (Tr. 326-27). She cannot drive or go out alone due to her seizure disorder, so she spends her days at her sister's house helping with chores. (Tr. 329-30). Plaintiff also has weekly panic attacks that cause her to shake and make her heart race. (Tr. 327). The panic attacks occur when she is under stress or tries to concentrate, and they are occasionally followed by a seizure. (Tr. 327-28). Plaintiff also has headaches approximately once every four months. (Tr. 328-29).

Plaintiff moved to the United States from Puerto Rico five or six years before the hearing. (Tr. 331). She completed the twelfth grade, presumably in Puerto Rico. (Tr. 324). She can write "a little bit" of English but she cannot read it. (Tr. 331). She answered some of the questions at the hearing with the assistance of a Spanish-English interpreter. (Tr. 330-31).

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  *Id.* §1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."

- 8 -

*Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 to subpart P of part 404 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ("RFC") based on all the relevant medical and other evidence" in the record. *Id.* §416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other

work." *Id.* §416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.   *ALJ McGuan's Decision*

ALJ McGuan followed the five-step analysis for evaluating disability claims.  Under step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 15, 2011, her SSI application date.  (Tr. 277).  At step two, the ALJ concluded that Plaintiff has the following severe impairments:  epilepsy/seizure disorder and obesity. (*Id.*).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (*Id.*).  Before proceeding to step four, the ALJ assessed Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform the full range of light work as defined in [20 C.F.R. §416.967(b)].[5]  The claimant must avoid heights, ladders, ropes, scaffolds and dangerous machinery and do no driving as part of the job requirements.  In addition, the claimant can occasionally interact with the public and occasionally understand, remember and carryout complex and detailed tasks.

---

[5]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §416.967(b).

(Tr. 278). Proceeding to step four, the ALJ found that Plaintiff is unable to perform her past relevant work. (Tr. 285). At the fifth step, the ALJ considered Plaintiff's age, education, ability to communicate in English, work experience, RFC, and the testimony of a vocational expert to conclude that she can perform jobs that exist in significant numbers in the national economy, including photocopy machine operator, router, and cleaner-housekeeper. (Tr. 285-86). As a result, the ALJ found that Plaintiff can successfully adjust to other work and, therefore, that she has not been under a disability within the meaning of the Act since her November 15, 2011 application date. (Tr. 286).

IV.   *Plaintiff's Challenges*

Plaintiff challenges ALJ McGuan's disability decision on three grounds: (1) the ALJ failed to properly evaluate her obesity; (2) the ALJ assessed her RFC without the benefit of any medical opinion; and (3) the case should be remanded for consideration of new evidence regarding her seizure disorder. (*See* Dkt. No. 17-1 (Plaintiff's Memo. of Law)). The Court will address each challenge in turn.

A.   *Plaintiff's Obesity*

After the parties stipulated to remand Plaintiff's first federal court action to the Commissioner, the Appeals Council issued a remand order directing ALJ McGuan to consider, among other things, Plaintiff's obesity in accordance with Social Security Ruling ("SSR") 02-1p. (Tr. 381-83). SSR 02-1p directs the ALJ to consider a claimant's obesity throughout the sequential evaluation process. SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002). Plaintiff argues that ALJ McGuan did not consider her obesity under SSR 02-1p and erred in giving "little weight" to Dr. Munir's opinion that she has moderate limitations in walking and standing.

Contrary to Plaintiff's argument, ALJ McGuan considered Plaintiff's obesity in accordance with SSR 02-1p. ALJ McGuan specifically noted Plaintiff's weight and body mass index in his decision. (Tr. 281). Unlike ALJ Hecht, ALJ McGuan found Plaintiff's obesity to be a severe impairment (*compare* Tr. 22, *with* Tr. 277), and he accounted for her obesity in concluding that she retains the RFC to perform light work (Tr. 284 ("[T]he assigned residual functional capacity covers the limitations the claimant has for her obesity . . . .")).

ALJ McGuan also properly gave little weight to Dr. Munir's opinion that Plaintiff has moderate limitations in walking and standing. (Tr. 284). As the ALJ correctly recognized in his decision, the fact that Plaintiff is obese does not automatically mean that she is limited in her ability to walk and stand. SSR 02-1p, 2002 WL 34686281, at *6 ("An [obese] individual *may* have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.") (emphasis added). The ALJ reviewed all of the evidence in the record and concluded that it does not support the walking and standing limitations assessed by Dr. Munir. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (an ALJ may properly decline to give controlling weight to a treating physician's opinion when the opinion is inconsistent with other substantial evidence in the record). The ALJ's decision in this regard is supported by substantial evidence, particularly because Dr. Munir's treatment notes leading up to his opinion do not mention any exertional limitations. (Tr. 210-16). Moreover, at the second administrative hearing, Plaintiff did not even mention her obesity, let alone testify that it limits her ability to walk or stand. (Tr. 320-42). Accordingly, for these reasons, Plaintiff's argument that ALJ McGuan misevaluated her obesity is without merit.

B. *RFC Assessment*

Plaintiff next argues that ALJ McGuan's RFC assessment is not supported by substantial evidence because the ALJ rejected the only medical opinion in the record (that of Dr. Munir) and improperly assessed her RFC based upon his own interpretation of the medical evidence. According to Plaintiff, ALJ McGuan should have developed the record with another medical opinion before assessing her RFC.

Remand is not required simply because an ALJ fails to request a medical opinion, *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order), particularly when the record does not indicate that the claimant's impairments severely limit her ability to perform light work, *O'Neil v. Colvin*, No. 13-CV-575-JTC, 2014 WL 5500662, at *7 (W.D.N.Y. Oct. 29, 2014). Such is the case here. As ALJ McGuan recognized in his decision (Tr. 284), the record does not at all indicate that Plaintiff has any exertional limitations that might impair her ability to perform light work. Indeed, Plaintiff did not complain of any alleged exertional limitations at the second administrative hearing (Tr. 320-42), and her own medical providers even encouraged her to engage in physical activity and exercise (Tr. 544, 568, 621). ALJ McGuan likely could have assessed an even less restrictive RFC, but he ultimately gave Plaintiff the benefit of the doubt by assessing an RFC of light work. (*See* Tr. 284 (finding Plaintiff's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms "to be somewhat exaggerated and lacking in credibility" and inconsistent with the medical and nonmedical evidence in the record, but nonetheless finding that his RFC assessment accounts for Plaintiff's limitations)). ALJ McGuan's RFC assessment is thus supported

by substantial evidence, and he did not have to request a medical opinion before rendering his assessment.

### C. *New Evidence*

Plaintiff also asks the Court to remand the case to the Commissioner to consider new evidence concerning her seizure disorder, namely, the "Seizures Residual Functional Capacity Questionnaire" report completed by Dr. Frost on March 16, 2016. Dr. Frost's report is attached to Plaintiff's motion for judgment on the pleadings. (*See* Dkt. No. 17-2).

The Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g). "Thus, [the claimant] must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently." *Id.* "Finally, claimant must show (3) good cause for her failure to present the evidence earlier." *Id.*

Plaintiff cannot meet the materiality requirement here because Dr. Frost's report would not have influenced ALJ McGuan to decide Plaintiff's application any differently. The record already contains extensive treatment notes from Dr. Frost and his physician's

assistant, Malia Deangelis. ALJ McGuan discussed Dr. Frost's and PA Deangelis' notes throughout his decision. Although Plaintiff argues that the ALJ failed to account for Dr. Frost's opinion in his report that Plaintiff would fall down unexpectedly, disrupt her co-workers, and require more supervision, the ALJ did in fact discuss Plaintiff's history of falling in his decision (Tr. 279-80), and he rendered an RFC assessment that precludes Plaintiff from driving, working at heights, and working with ladders, ropes, scaffolds, and dangerous machinery (Tr. 278).

Plaintiff likewise cannot satisfy the good cause requirement. Plaintiff began treating with Dr. Frost in 2012, yet Plaintiff's counsel did not ask Dr. Frost to render his opinion until March 2, 2016 — more than a year after the federal court remand, nearly three months after the second administrative hearing, and only days before ALJ McGuan issued his decision. (Dkt. No. 17-2 at 5). Plaintiff has not offered any reason for this lengthy delay in requesting the opinion. Moreover, at the second administrative hearing, Plaintiff's counsel advised ALJ McGuan that the record was complete except for some counseling notes; counsel did not state that he wished to obtain an opinion from Dr. Frost. (Tr. 322-23). Absent a reasonable explanation for the lengthy delay in seeking Dr. Frost's opinion, the Court is unable to find good cause for remand. *See Tirado*, 842 F.2d at 597 (requiring the claimant to show "good cause for her failure to present the evidence earlier."). Accordingly, this case should not be remanded to the Commissioner for consideration of Dr. Frost's opinion.

## **CONCLUSION**

For the foregoing reasons, it is recommended that Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) be denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 20) be granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal

authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

      **SO ORDERED.**

Dated:      March 20, 2018
              Buffalo, New York

                                  */s/ Michael J. Roemer*
                                  MICHAEL J. ROEMER
                                  United States Magistrate Judge